Quarles & Brady Streich Lang LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200

Best Western International, Inc.
André H. Merrett (#020889)
Sean D. Johnson (#018423)
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEST WESTERN INTERNATIONAL, INC., an Arizona non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>B.W.TYLER, a Texas limited liability corporation; and DILIP PATEL and JANE DOE PATEL, husband and wife,<br><br>Defendants. | NO. _____<br><br>Verified Complaint for Federal Trademark Infringement, False Designation of Origin, Federal Trademark Dilution, Post Termination Use of Trademarks, Unfair Competition, State Trademark Dilution, and Common Law Trademark Infringement<br><br>(Injunctive Relief Requested) |

Plaintiff Best Western International, Inc. ("Best Western"), for its Complaint against defendants B.W. Tyler, LLC ("Tyler"), Dilip Patel ("Patel") and Jane Doe Patel alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for federal trademark infringement, and unfair competition under the Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. §§ 1051 et seq.), and related common law and statutory causes of action arising from defendants' refusal to cease and desist their unauthorized use of Best Western's trade name, trademarks, service marks, logos, and other similar identification symbols (the "Best

Western Marks") in violation of Best Western's federal and common law trademark rights.

## THE PARTIES, JURISDICTION, AND VENUE

2. Best Western is an Arizona non-profit corporation headquartered in Phoenix, Arizona.

3. Upon information and belief, Tyler is a Texas limited liability corporation.

4. Patel and Jane Doe Patel are a residents of the State of California.

5. Upon information and belief, at all times material hereto, defendants Patel and Jane Doe Patel are husband and wife who were acting on their own behalf and on behalf of their marital community.

6. The fictitious defendant is an individual who may be liable for all or a portion of the liability of Patel to Best Western. Best Western respectfully requests leave of this Court to substitute the true name of the fictitious defendant if such is discovered.

7. This Court has jurisdiction over the Lanham Act claim set forth below by virtue of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the other claims set forth below by virtue of 28 U.S.C. §§ 1332, 1367 and/or 1338(b).

8. Venue in this judicial district and the exercise of personal jurisdiction over the defendants by this Court are proper pursuant to 28 U.S.C. § 1391(b) and (c) and because, among other reasons: (a) defendants have contractually agreed to litigate all disputes with Best Western arising from or related to the Best Western Membership Application and Agreement executed by Patel on July 31, 1996 (the "Membership Agreement"), or any relationship between the parties, in Arizona state or federal court; (b) defendants have caused events to occur, and injuries to result, in the State of Arizona; and (c) defendants aimed their conduct at Best Western, knowing that Best Western is located

in Arizona, and harming Best Western in Arizona. A copy of the Membership Agreement is attached hereto as **Exhibit 1**.

## GENERAL ALLEGATIONS

9. Best Western operates as a membership organization consisting of individually owned and operated hotels (i.e., its members). The rights and obligations of Best Western's members are determined by the membership and are set forth in the Membership Agreement, Best Western's Bylaws, and in Best Western's Rules and Regulations (the "Rules and Regulations").

10. Best Western provides to its members various services including a worldwide reservation system and worldwide marketing campaigns, the option to participate in collective purchasing of hotel equipment, furnishings, and supplies (the "Best Western Services"). Best Western employs a large number of employees worldwide who are dedicated to providing member hotels with the Best Western Services.

11. Each Best Western member is authorized to use the Best Western Marks in connection with its hotel pursuant to a limited, non-exclusive license (the "Best Western License"), which is set forth in the Membership Agreement. See Membership Agreement at ¶¶ 19-26.

12. In exchange for receiving the Best Western Services and the Best Western License, Best Western members are obligated to, among other things pay, membership fees and other assessments.

13. Best Western first adopted "Best Western" as its trade name in 1947. Shortly thereafter, Best Western adopted and began using "Best Western" as a trademark identifying hotel services provided by member hotels that were affiliated with Best Western. Best Western has continuously and extensively promoted its trade name and trademark in interstate commerce since 1947. As a result of this extensive promotion, the

trade name and trademark have become famous among consumers as a source-identifying symbol.

14. Since 1947, Best Western has registered with the United States Patent and Trademark Office ("USPTO") various trademarks, service marks and collective membership marks. On April 14, 1959, the Best Western logo was first registered as a service mark by the USPTO under Registration No. 677,103. Best Western has developed the Best Western Marks at great expense over the past decades.

15. Best Western owns the following registrations for Best Western Marks and the marks referenced in these registrations:

(a) a Best Western logo was registered as a service mark by the USPTO on April 14, 1959, under Registration No. 677,103.

(b) a Best Western logo was registered as a collective membership mark by the USPTO on October 27, 1959, under Registration No. 687,405.

(c) a Best Western logo was registered as a collective membership mark by the USPTO on May 5, 1964, under Registration No. 769,314.

(d) a Best Western logo was registered as a service mark by the USPTO on May 14, 1968, under Registration No. 849,155.

(e) a Best Western logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,616.

(f) a Best Western logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,617.

(g) a Best Western logo was registered as a collective membership mark by the USPTO on June 8, 1971, under Registration No. 914,812.

(h) a Best Western logo was registered as a collective membership mark by the USPTO on June 8, 1971, under Registration No. 914,813.

(i) a Best Western logo was registered as a service mark by the USPTO on August 30, 1977, under Registration No. 1,072,360.

(j) a Best Western logo was registered as a collective membership mark by the USPTO on September 27, 1977, under Registration No. 1,074,300.

(k) a Best Western logo was registered as a service mark by the USPTO on June 11, 1985, under Registration No. 1,341,611.

(l) the Best Western word mark was registered by the USPTO as a service mark on February 3, 1987, under Registration No. 1,427,735.

(m) the Best Western word mark was registered by the USPTO as a service mark on March 10, 1987, under Registration No. 1,432,431.

(n) the Best Western crown logo design was registered by the USPTO as a service mark on December 6, 1988, under Registration No. 1,515,712.

(o) Best Western's current logo was registered by the USPTO as a trademark on June 20, 1995, under Registration No. 1,900,620.

(p) Best Western's current logo was registered by the USPTO as a service mark on November 7, 1995, under Registration No. 1,933,830.

(q) Best Western's current logo was registered by the USPTO as a service mark on November 25, 1997, under Registration No. 2,116,079.

(r) Best Western's current logo was registered by the USPTO as a service mark on October 14, 1997, under Registration No. 2,105,546.

(s) Best Western's current logo was registered by the USPTO as a service mark on March 3, 1998, under Registration No. 2,140,332.

QBPHX\150984.70011\1969618.1

(t) Best Western has registered a variety of other designs and phrases as service marks in connection with the trade of hotel and motel lodging.

16. Many of the registrations described above are currently in full force and effect, unrevoked and uncancelled. Several of the above listed federal registrations for the Best Western word mark and logo have become incontestable under 15 U.S.C. § 1065.

17. The Best Western Marks are inherently distinctive and possess strong secondary meaning.

18. The Membership Agreement and the Rules and Regulations establish the minimum standard scores that each member must meet in order to achieve and maintain membership. As a result, consumers worldwide associate the Best Western Marks with high quality in the hotel/motel industry.

19. A key element of Best Western's branding effort is the display of the Best Western Marks on the premises of member hotels through signs, publications, and other public displays.

20. Upon default by a member hotel of certain of its obligations to Best Western, including obligations set forth in the Membership Agreement, the Bylaws, and the Rules and Regulations, the Best Western Board of Directors may terminate the membership and the Best Western License.

21. Within 15 days following the termination of membership, the former member must cease and desist from using, and remove from public view, all Best Western Marks and all references to Best Western. The former member is also required to cease and desist from using any item that is similar to the Best Western Marks in spelling, sound, appearance, or in any other manner.

## DEFENDANTS' BEST WESTERN MEMBERSHIP

22. On or about July 31, 1996, Tyler, through its agent, Patel, executed the Membership Agreement. Upon Best Western's approval of the Membership Agreement defendants became Best Western members and the Membership Agreement became the contract controlling the relationship between defendants and Best Western.

23. On or about July 31, 1996, Patel became a Best Western voting member and as such consented to the jurisdiction of this Court and to venue lying in this district; became bound by the terms of the Membership Agreement; and personally shares liability for Tyler's obligations arising under the Membership Agreement.

24. Defendants agreed to timely pay all fees, dues, charges and assessments imposed generally on the membership by the board of Best Western and to promptly pay the costs of all goods or services provided by or ordered through Best Western. Additionally, they further agreed that past due amounts would bear interest at the rate of one and one-half percent (1.5%) per month from the date due until paid, provided that such interest charge would in no way authorize or excuse late payments or limit Best Western's rights and remedies against them.

25. Defendants owned and operated the hotel formerly known as the Best Western Inn & Suites, located in Tyler, Texas, and referenced in Best Western's records as property 44260 (the "Hotel").

26. Best Western granted defendants the Best Western License, thereby allowing them to use the Best Western Marks in connection with the Hotel, subject to the terms of the Best Western License, and only for the term of the Best Western License.

27. Defendants agreed that "[a]ny portion of any sign displaying a Best Western [Mark] is and shall remain the property of Best Western." Defendants further agreed to

"transfer title of all such portions of signs, whether now owned or acquired in the future, to Best Western." See Membership Agreement at paragraph 21.

28. Defendants agreed that termination of the Best Western Membership would result in termination of the Best Western License. Defendants agreed to "remove from public view and cease using" all Best Western Marks and all other references to Best Western within 15 days of the date of termination. See Membership Agreement at ¶ 22.

29. Defendants also agreed that, upon termination of the Best Western License, they would "actively take steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol." See Membership Agreement at ¶ 22.

30. On or about May 31, 2005, after granting defendants an extension of time within which to comply with its Rules and Regulations and defendants' failure to do so, Best Western, in accordance with applicable provisions of the Membership Agreement, Bylaws and Rules and Regulations, notified Patel that defendants' membership was terminated. Additionally, Best Western advised that defendants needed to discontinue use of the Best Western Marks. A copy of this notice is attached hereto as **Exhibit 2**.

### DEFENDANTS' INTENTIONAL AND UNLAWFUL USE OF THE BEST WESTERN MARKS

31. In the ordinary course of its business, Best Western sent Michael Simmons, a Best Western Regional Service Manager, to the Hotel on August 22, 2005. As part of his regular duties, Mr. Simmons took photographs of signs and/or collateral items displayed in connection with the Hotel. These photographs show that, notwithstanding Best Western's requests, defendants had failed to remove items containing the Best Western Marks in connection with the Hotel and were still holding the Hotel out to the public as a Best Western member.

32. In correspondence dated August 25, 2005, Best Western reminded defendants of their obligation to cease and desist from the unauthorized use of the Best Western Marks. Specifically, Best Western reminded Patel to immediately: (a) cease and desist using the Best Western Marks in connection with the Hotel's business, services, or products; (b) remove any signs, sign cabinets, banners, letters or other objects and withdraw and destroy all advertising, internet based pages or other promotional materials bearing the Best Western Marks; and (c) cease and desist stating or implying that the Hotel is affiliated with or endorsed by Best Western in any way whatsoever. Best Western warned Patel that noncompliance with the terms of the Membership Agreement and trademark laws would result in litigation. A copy of this correspondence is attached hereto as **Exhibit 3**.

33. Upon information and belief, defendants continue to use - - intentionally and unlawfully - - the Best Western Marks in connection with the Hotel.

34. Defendants' intentional and unlawful use of the Best Western Marks in connection with the Hotel is likely to confuse the public and cause members of the public to stay at the Hotel in the mistaken belief that the Hotel is a Best Western Hotel. Defendants' misconduct is also likely to divert to defendants the benefit of and/or damage the reputation and goodwill that Best Western has built throughout the years.

## COUNT I -
## BREACH OF CONTRACT – POST TERMINATION USE OF TRADEMARKS

35. Best Western incorporates by reference the allegations contained in paragraphs 1 through 35 as though fully set forth herein.

36. Pursuant to the express terms of the Membership Agreement, defendants were obligated to remove from public view, and to cease all use of, the Best Western Marks in connection with the Hotel within fifteen (15) days after termination. This

QBPHX\150984.70011\1969618.1

prohibition included making any representation, whether direct or indirect, indicating that the Hotel is affiliated with Best Western.

37. Despite Best Western's demand that defendants discontinue their use of the Best Western Marks in connection with the Hotel, they have used and continue to use the Best Western Marks in connection with the Hotel.

38. Paragraph 24 of the Membership Agreement provides for liquidated damages where, as here, defendants continue to use the Best Western Marks in connection with the Hotel for more than fifteen (15) days following the termination of their Best Western membership and the Best Western License. The amount of liquidated damages is equal to fifteen percent (15%) of the mean of the Hotel's room rates per day multiplied by the total number of rooms for every day that defendants continue to use the Best Western Marks beyond the 15 day period. As of November 1, 2005, the amount of liquidated damages due and owing to Best Western by defendants is $158,126.40. Such liquated damages continue to accrue at the rate of $1,137.60 per day. The liquidated damages calculations are based on the Hotel's information provided in the 2005 Best Western Traveler's Guide and Road Atlas ("the "Traveler's Guide"). Copies of relevant pages of The Traveler's Guide are attached hereto as **Exhibit 4**.

39. Pursuant to paragraph 36 of the Membership Agreement and A.R.S. §12-341.01, Best Western is entitled to recover the attorney's fees and costs incurred in pursuing this action.

### COUNT II – FEDERAL TRADEMARK INFRINGEMENT – (LANHAM ACT §32(1), 15 U.S.C. §1114(1))

40. Best Western incorporates by reference the allegations contained in paragraphs 1 through 40 as though fully set forth herein.

41. Despite written demand by Best Western, defendants refuse to cease and desist from the use of the Best Western Marks in connection with the Hotel.

42. Defendants continue to hold the Hotel out to the public as a Best Western member, despite the fact that an affiliation no longer exists between them and Best Western.

43. Defendants' unauthorized use of the Best Western Marks is likely to cause the public to believe, erroneously, that the Hotel is, in fact, a Best Western. Also, it is likely to divert to defendants the benefit of the reputation and goodwill associated with Best Western's name and/or damage the reputation and goodwill associated with Best Western's name.

44. Defendants' actions complained of herein have at all times been without Best Western's consent. Defendants' acts constitute infringement of the Best Western Marks in violation of §32(1) of the Lanham Act, 15 U.S.C. §1114(1), and §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

45. Defendants' acts complained of herein will damage Best Western irreparably. Monetary damages will not afford full and adequate relief for all of Best Western's injuries resulting from defendants' conduct. Such injuries will include harm to Best Western's goodwill and reputation in the marketplace that money cannot sufficiently compensate. Best Western is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining defendants and their respective officers, members, agents, servants and employees and any other persons or entities acting on behalf of or in concert with defendants from using the Best Western Marks or any colorable imitation thereof, in connection with the promotion, advertisement and sale of goods and services without Best Western's authorization, pursuant to 15 U.S.C. §1116.

46. Defendants' infringement is willful. Accordingly, Best Western is entitled to recover all damages sustained as a result of defendants' unlawful conduct, including

QBPHX\150984.70011\1969618.1

three times defendants' profits and Best Western's damages, as well as the costs of this suit and attorney's fees, pursuant to 15 U.S.C. §1117.

## COUNT III - <br> FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION – <br> (LANHAM ACT §43(a), 15 U.S.C. §1125)

47. Best Western incorporates by reference the allegations contained in paragraphs 1 through 47 above as though fully set forth herein.

48. Defendants' unauthorized use of the Best Western Marks is likely to cause the public to believe, erroneously, that the Hotel and its services are sponsored by, endorsed by, or associated with Best Western.

49. Defendants' continued operation and competition with Best Western through infringement of the Best Western Marks in connection with the Hotel constitutes a false designation of origin and unfair competition under §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

50. Defendants' conduct has caused, and unless enjoined, will cause, Best Western to suffer immediate, irreparable and continuous loss, including injury to its goodwill and reputation.

51. Upon information and belief, defendants have undertaken the acts complained of herein willfully and with the intent to cause confusion, mistake and deception on the part of the public.

52. Unless defendants are restrained by this Court, they will continue to commit the foregoing acts of unfair competition.

53. Monetary damages will not afford full and adequate relief for all of Best Western's injuries resulting from defendants' conduct, and, therefore, Best Western is entitled to injunctive relief under 15 U.S.C. §§ 1116, 1118.

54. Defendants' acts of unfair competition are willful and entitle Best Western to recover damages, attorney's fees and costs pursuant to 15 U.S.C. §1117.

QBPHX\150984.70011\1969618.1

## COUNT IV – FEDERAL TRADEMARK DILUTION - (15 U.S.C. §1125(c))

55. Best Western incorporates by reference the allegations contained in paragraphs 1 through 55 above as though fully set forth herein.

56. Best Western has advertised and publicized the Best Western Marks extensively for decades throughout the United States, including the State of Arizona. As a result of their inherent distinctiveness and extraordinarily widespread use, the Best Western Marks have acquired a high degree of recognition and fame for hotel services.

57. Defendants began using the Best Western Marks in commerce, pursuant to the Best Western License, long after Best Western's marks had already become famous throughout the United States, including the State of Arizona.

58. Defendants' use of the Best Western Marks or variations thereof, in violation of the Best Western License, has caused, and will continue to cause, dilution of the distinctive quality of the Best Western Marks.

59. Upon information and belief, defendants have committed the acts complained of herein willfully and with the intent to trade on Best Western's reputation and/or to cause dilution of Best Western's famous marks.

60. Defendants have damaged Best Western's business, reputation and goodwill. Moreover, defendants' acts have caused, and unless enjoined will continue to cause, irreparable harm and injury to Best Western for which it has no adequate remedy at law.

## COUNT V – UNFAIR COMPETITION – ARIZONA LAW

61. Best Western incorporates by reference the allegations contained in paragraphs 1 through 61 above as though fully set forth herein.

62. Defendants' acts complained of herein constitute unfair competition under the laws of the State of Arizona.

QBPHX\150984.70011\1969618.1

63. Defendants have been unjustly enriched and have damaged Best Western's business, reputation and goodwill.

64. Upon information and belief, defendants' acts complained of herein were intentional, wanton, willful and committed in bad faith with the intent to confuse and deceive the public.

65. Defendants' acts complained of herein have caused, and unless enjoined will continue to cause, Best Western irreparable harm for which there is no adequate remedy at law.

## COUNT VI – TRADEMARK DILUTION UNDER ARIZONA LAW – (A.R.S. §44-1448.01)

66. Best Western incorporates by reference the allegations contained in paragraphs 1 through 66 above as though fully set forth herein.

67. The Best Western Marks are famous within the State of Arizona, and became famous in Arizona long before defendants began using the marks.

68. Defendants' acts complained of herein constitute commercial use of a mark or trade name that causes dilution of the distinctive quality of the famous Best Western Marks.

69. Upon information and belief, defendants have undertaken these acts willfully and with the intent to trade on Best Western's reputation or to cause dilution of the Best Western Marks.

70. Defendants' acts complained of herein cause dilution of Best Western's famous marks in violation of A.R.S. §44-1448.01.

71. Defendants' acts complained of herein have caused, and unless enjoined will continue to cause, irreparable harm and injury to Best Western's famous Best

QBPHX\150984.70011\1969618.1

Western Marks, business reputation and goodwill for which there is no adequate remedy at law.

## COUNT VII – COMMON LAW TRADEMARK INFRINGEMENT

72. Best Western incorporates by reference the allegations contained in paragraphs 1 through 72 above as though fully set forth herein.

73. Best Western also has common law rights in the Best Western Marks through the use of the marks in commerce, such rights existing long before any use of the marks by defendants.

74. Defendants' acts complained of herein constitute common law infringement of the Best Western Marks.

75. Upon information and belief, defendants have undertaken these acts willfully and with the intent to trade on Best Western's reputation and to cause confusion, mistake and deception on the public.

76. Defendants' acts complained of herein have caused, and unless enjoined will continue to cause, irreparable harm and injury to Best Western's famous Best Western Marks, business reputation and goodwill for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Best Western prays for judgment against defendants, jointly and severally, as follows:

A. With respect to Count I:

1. Liquidated damages for breach of the Best Western Agreement in an amount equal to fifteen percent (15%) of the mean of the Hotel's room rates per day multiplied by the total number of rooms from June 15, 2005 (the 16th day following

termination of the membership) until defendants cease and desist from the unlawful and unauthorized use of the Best Western Marks;

   2. As of November 1, 2005, the amount of liquidated damages that defendants owe to Best Western is $158,126.40, and such damages continue to accrue at the rate of $1,137.60 per day.

 C. With respect to Counts II, III, IV and VI.

 An order requiring defendants to make an accounting of the profits derived by them by reason of their unlawful acts, holding defendants liable to Best Western for such profits, and awarding Best Western its actual damages suffered as a result of the trademark infringement complained of against defendants, in an amount to be proven at trial;

 D. With respect to Counts II, III and VI:

 An award of treble damages against defendants pursuant to 15 U.S.C. §1117(b), or, alternatively, an award of liquidated damages to Best Western against defendants calculated in the manner provided for in paragraph 24 of the Membership Agreement, whichever is greater;

 E. With respect to Counts I – VII:

   1. Preliminary and permanent injunctive relief enjoining defendants, and their respective officers, members, agents, servants, and employees, and any other persons or entities acting on behalf of or in concert with defendants, from:

    (a) Making any use of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar marks;

    (b) Displaying, authorizing, licensing or assisting or facilitating any other person's or entity's use or display of the Best Western Marks or any colorable imitation thereof; and

     (c) Using anything consisting of or incorporating any one or more words, letters, designs or devices that contain any component of the Best Western Marks, or which singly or together are similar in spelling, sound, appearance, or in any other manner to the Best Western Marks;

   2. Preliminary and permanent injunctive relief enjoining defendants and their respective officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with defendants, to immediately and permanently remove all Best Western Marks as used on the premises of, or in reference to, the Hotel including (without limitation) any road signs, wall signs, or any other display or item bearing any of the Best Western Marks;

   3. Preliminary and permanent injunctive relief ordering defendants to permit Best Western to remove any infringing signs, displays or items from the Hotel, and awarding Best Western all reasonable and necessary costs of such removal from defendants (in addition to whatever penalties the Court may impose on defendants for failing to comply with the Court's order to remove any infringing signs, displays, or items from the Hotel), if defendants do not remove such signs, displays or items from the Hotel within ten (10) days of the injunction issued pursuant to Paragraphs (D)(1) and (2) above;

   4. Preliminary and permanent injunctive relief enjoining defendants and their respective officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with defendants from applying for, pursuing, or owning any applications or registrations, including without limitation any domain names, business names, corporate names, trade names, trademarks, service marks or d/b/as that contain any component of the Best Western Marks, any colorable imitation thereof, or any confusingly similar Marks;

QBPHX\150984.70011\1969618.1

5.  Preliminary and permanent injunctive relief ordering defendants and their respective officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with defendants, to immediately assign the ownership of any application or registration that contains any component of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar Marks to Best Western, or, alternatively, to file all documents necessary to effectuate defendants' abandonment of such applications or registrations;

6.  Preliminary and permanent injunctive relief ordering defendants and their respective officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with defendants, to immediately notify all advertisers, search engines, and providers of related services that defendants are no longer affiliated with Best Western and are required to cause the cessation of all advertising and distribution of promotional material containing any of the Best Western Marks, any colorable imitation thereof, or any other confusingly similar marks, and enjoining defendants from using any such marks (or any imitations or marks confusingly similar thereto) anywhere on the Internet or elsewhere, including without limitation any use on or with any websites, domain names, metatags, key words, banner ads, or search engines;

7.  An Order directing defendants to file with this Court and serve on Best Western within ten (10) days after service of an injunction, a report in writing under oath setting forth in detail the manner and form in which defendants have complied with such injunction; and

8.  An award to Best Western of its damages, in an amount to be proven at trial.

F.  With respect to Count V, an award of special exemplary and/or punitive damages in an amount to be determined at trial; and

QBPHX\150984.70011\1969618.1

G. With respect to all Counts:

1. Attorney's fees and costs incurred herein against defendants pursuant to the Membership Agreement, A.R.S. §12-341.01, and/or 15 U.S.C. §1117(a), (or any other applicable law); and

2. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 10th day of November, 2005.

> QUARLES & BRADY STREICH LANG LLP
> Renaissance One
> Two North Central Avenue
> Phoenix, AZ 85004-2391
>
> By *s/André H. Merrett*
> André H. Merrett
> Sean D. Johnson
>
> *Attorneys for Plaintiff*
> Best Western International, Inc.

QBPHX\150984.70011\1969618.1

# VERIFICATION

STATE OF ARIZONA )
)
County of Maricopa )

I, Cheryl Pollack, depose and state as follows:

I am the Director, Member Services Administration of Best Western International Inc. ("Best Western"). I am authorized by Best Western to execute this Verification. I am over the age of 18 years and a resident of Maricopa County, Arizona.

I have read the foregoing verified Complaint and know the contents thereof. The information contained therein is true and correct to the best of my knowledge, information and belief.

_____
Cheryl Pollack

STATE OF ARIZONA )
) ss.
County of Maricopa )

The foregoing instrument was acknowledged before me this 10 day of November, 2006, by Cheryl Pollack.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:

June 17, 2007

> NOTARY PUBLIC
> STATE OF ARIZONA
> Maricopa County
> BILLIE A. HANSON
> My Commission Expires 06/17/07

QBPHX\150984.70011\1969618.1